

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE FEB 2 7 2020

CHIEF JUSTICE

This opinion was
filed for record
at 8am on Feb 27, 2020

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Respondent, | ) | No. 95080-6 |
| v. | ) | |
| | ) | En Banc |
| MIKHAIL G. KARPOV, | ) | |
| Petitioner. | ) | Filed FEB 2 7 2020 |

WIGGINS, J.—The district court dismissed the criminal case against Mikhail G. Karpov on the ground that the State had failed to prove jurisdiction. The question before us is whether the State could appeal that dismissal and retry Karpov upon reversal. Karpov argues that jurisdiction is an essential element of every crime and thus that the dismissal for the State's failure to prove jurisdiction resulted in an acquittal, meaning double jeopardy barred the State's initial appeal and prohibits retrial. The State counters that jurisdiction is not an essential element of every crime and thus that double jeopardy does not apply here. We hold that jurisdiction is *not* an essential element of every crime but, rather, is the power of the court to hear and determine a case. However, we reverse the superior court and remand for the reinstatement of the trial court's dismissal with prejudice. When the trial court

*substantively treated* jurisdiction as an essential element of the crime, the dismissal for failure to prove jurisdiction was no different than if jurisdiction *were* actually an essential element. The trial court therefore judicially acquitted Karpov when it dismissed the case against him, and double jeopardy barred the State's appeal from the district court and prohibits retrial of Karpov on these charges.

## FACTS AND PROCEDURAL HISTORY

Karpov was tried in the district court of Spokane County for five counts of indecent exposure. After the State rested, Karpov moved to dismiss the case on the ground that the State had provided insufficient evidence of jurisdiction. The court granted the motion because no witness had expressly stated that the alleged crimes took place in Spokane County, to which the district court's jurisdiction is statutorily limited. *See* RCW 3.66.060. The district court concluded that the State had failed to prove that the court had jurisdiction over Karpov's alleged crimes[1] and dismissed all five counts of indecent exposure.

When dismissing the case, the trial court expressly stated that its ground for dismissal was that the State had failed to prove the "essential element" of jurisdiction. Clerk's Papers (CP) at 2. Further, it ordered dismissal with prejudice.

The State appealed to superior court. The State argued that the trial court had erred in dismissing the case for failure to prove jurisdiction and that double jeopardy

---

[1] Although the district court dismissed for "jurisdiction and/or venue," Clerk's Papers at 251, 2 (Order of Dismissal), Karpov's argument concerns only the meaning of the jurisdictional dismissal, not venue. *See* Mot. for Discr. Review at 7, Br. of Pet'r at 7-8. The issue of venue is therefore not before this court.

did not apply. Karpov argued that the State's appeal and any retrial were barred by double jeopardy.

The superior court agreed with the State. In holding that the district court had erred in finding the evidence insufficient to establish jurisdiction, the superior court reasoned that the State presented evidence that the incidents had occurred in Spokane County. The superior court also found that double jeopardy did not bar the State's appeal because the dismissal did not decide the question of Karpov's factual guilt. It reversed the district court's dismissal of the charges and remanded the case for trial.

The Court of Appeals denied Karpov's motion for discretionary review, reasoning that double jeopardy did not bar retrial in this case. Karpov moved for discretionary review by this court, which we granted.

## STANDARD OF REVIEW

We review double jeopardy claims de novo as questions of law. *State v. S.S.Y.*, 170 Wn.2d 322, 328, 241 P.3d 781 (2010) (citing *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005)).

## ANALYSIS

Our constitution commands, "No person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. The United States Constitution similarly provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. States are bound by the federal double jeopardy clause via the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland*, 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

3

Additionally, we have long held that our "state constitutional rule against double jeopardy provides the same scope of protection as the federal constitutional rule." *State v. Sutherby*, 165 Wn.2d 870, 878, 204 P.3d 916 (2009) (citing *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995)). Neither Karpov nor the State has argued that we should depart from federal case law and neither has performed the *Gunwall*[2] analysis necessary to do so. *See Blomstrom v. Tripp*, 189 Wn.2d 379, 400-01, 402 P.3d 831 (2017) (setting forth six *Gunwall* factors).

Double jeopardy bars appeal and retrial when the defendant has been acquitted. *See State v. Hall*, 162 Wn.2d 901, 906-07, 177 P.3d 680 (2008) (citing *State v. Ervin*, 158 Wn.2d 746, 752-53, 147 P.3d 567 (2006)). Acquittals by the judge are known as "judicial acquittals." *See Evans v. Michigan*, 568 U.S. 313, 327, 133 S. Ct. 1069, 185 L. Ed. 2d 124 (2013). A dismissal by a trial judge is a judicial acquittal when it adjudicates the ultimate question of factual guilt or innocence. *Id.* at 319. Such dismissals "encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Id.* at 318-19 (citing *United States v. Scott*, 437 U.S. 82, 98 & n.11, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978); *Burks v. United States*, 437 U.S. 1, 10, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)). Thus, when the trial court "act[s] on its view that the prosecution ha[s] failed to prove its case" and dismisses the case in the defendant's favor, the trial court judicially acquits the defendant. *Id.* at 325. A judicial acquittal triggers the protections of the double jeopardy clauses even when

---

[2] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

4

the judge bases the acquittal on an erroneous understanding of the elements of the crime. *Id.* at 318.

I.   Jurisdiction is not an essential element of every crime but instead concerns the power of a court to act

Karpov hinges his double jeopardy argument on jurisdiction. First, he asserts that jurisdiction is an essential element of every crime. Br. of Pet'r at 1. Then he concludes that "[t]he principles of double jeopardy bar reinstatement of . . . [the] criminal charges [against him] . . . because the State closed its case without presenting sufficient evidence of the essential element of jurisdiction, and the case was previously dismissed by the trial court due to the State's failure to establish jurisdiction." *Id.* at 5-6. Karpov's argument fails because jurisdiction is not an essential element of every crime.

Rather than being an essential element of every crime, "[j]urisdiction is the power of a court to hear and determine a case." *State v. Lane*, 112 Wn.2d 464, 468, 771 P.2d 1150 (1989). Karpov in fact agrees, noting that "[j]urisdiction relates to a court's authority to adjudicate a case before them." Mot. for Discr. Review at 7 (citing *J.A. v. State*, 120 Wn. App. 654, 657, 86 P.3d 202 (2004)). Jurisdiction is therefore the court's authority or power. It must underlie every case that is brought before a judge.

In a criminal case, a trial court must have jurisdiction to determine the guilt or innocence of the accused. Indeed, double jeopardy "does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.'" *Serfass v. United States*, 420 U.S. 377, 391, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975) (quoting *Kepner v. United States*, 195 U.S. 100, 133,

5

24 S. Ct. 797, 49 L. Ed. 114 (1904)); *see also State v. Cockrell*, 102 Wn.2d 561, 567, 689 P.2d 32 (1984) (double jeopardy cannot apply unless a defendant was tried before a court of "'competent jurisdiction to hear and determine the merits of the cause'" (quoting *State v. Ridgley*, 70 Wn.2d 555, 557, 424 P.2d 632 (1967))).

This is not to say that jurisdiction can *never* be an essential element. There are crimes that include jurisdictional elements. Driving under the influence is an example of such a crime. RCW 46.61.502(1) ("A person is guilty of driving while under the influence of intoxicating liquor, marijuana, or any drug if the person drives a vehicle *within this state.*" (emphasis added)). The crime here includes no such jurisdictional element.[3] Many *federal* crimes have jurisdictional elements. *See Torres v. Lynch*, 578 U.S. __, 136 S. Ct. 1619, 1625, 194 L. Ed. 2d 737 (2016) (discussing this issue). But, as the United States Supreme Court has noted, "[f]or obvious reasons, state criminal laws do not include the jurisdictional elements common in federal statutes." *Id.* This "obvious reason[ ]" is that states are not limited to enumerated powers, as is Congress, and therefore do "not need . . . a jurisdictional hook" like the commerce clause to

---

[3] The offense of indecent exposure, RCW 9A.88.010, reads:

> (1) A person is guilty of indecent exposure if he or she intentionally makes any open and obscene exposure of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm. The act of breastfeeding or expressing breast milk is not indecent exposure.
> (2)(a) Except as provided in (b) and (c) of this subsection, indecent exposure is a misdemeanor.
> (b) Indecent exposure is a gross misdemeanor on the first offense if the person exposes himself or herself to a person under the age of fourteen years.
> (c) Indecent exposure is a class C felony if the person has previously been convicted under this section or of a sex offense as defined in RCW 9.94A.030.

No jurisdictional element can be found.

exercise their authority. *Id.* Instead, state legislatures "exercis[e] their plenary police powers" when they create crimes. *Id.*

Karpov argues that jurisdiction is an "essential element" of every criminal case, which must be proved beyond a reasonable doubt. Karpov is wrong for several reasons. While we have referred to jurisdiction as an "'integral component'" of the State's case, which it must prove, that does not make it into an essential element. *State v. Norman*, 145 Wn.2d 578, 589, 40 P.3d 1161 (2002) (quoting *State v. Squally*, 132 Wn.2d 333, 340, 937 P.2d 1069 (1997) (citing *State v. Svenson*, 104 Wn.2d 533, 542, 707 P.2d 120 (1985))). Rather, this court has treated the essential elements of a crime as distinct from questions of jurisdiction. *E.g.*, *Lane*, 112 Wn.2d at 468 ("The State of Washington may exercise jurisdiction over a criminal offense if an essential element of the offense occurred within the state but outside the land ceded to the federal government (where the offense culminated)."); *State v. Knutsen*, 168 Wash. 633, 637, 12 P.2d 923 (1932) (treating essential elements of the crime and jurisdiction over those crimes as separate questions); *see also State v. Dodson*, 143 Wn. App 872, 878, 182 P.3d 436 (2008) ("[T]he district court had jurisdiction to hear [the defendant's case] because an essential element of both offenses [charged] was committed within an area of state jurisdiction.").

In line with prior precedent, we reject Karpov's argument. Jurisdiction is not an essential element of every crime. However, this does not resolve the issue. There is another case, uncited by Karpov, that nevertheless provides the crucial answer in a situation such as this: *Evans. See generally* 568 U.S. 313. *Evans* makes clear that although jurisdiction is not an essential element of every crime, double jeopardy

7

nevertheless barred the State's appeal from the district court and prohibits retrial of Karpov's case.

## II.   The trial court judicially acquitted Karpov

The trial court judicially acquitted Karpov because it *treated* jurisdiction as an essential element of the offense (even though jurisdiction is not an essential element). *Scott*, 437 U.S. 82, crafted the key inquiry into whether a dismissal was a judicial acquittal. In *Scott*, the United States Supreme Court held that "where the defendant . . . seeks to have the trial terminated without any submission to either judge or jury as to his [or her] guilt or innocence," any resulting dismissal does *not* trigger double jeopardy. *Id.* at 101.[4] Thus,  when a defendant "deliberately choos[es] to seek termination of the proceedings against him [or her] on a basis unrelated to factual guilt or innocence of the offense of which he [or she] is accused, [the defendant] suffers no injury cognizable under the Double Jeopardy Clause." *Id.* at 98-99. Conversely, "when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged,'" the defendant is acquitted. *Id.* at 97 (alteration in original) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977)).

---

[4]Although in part *Scott* speaks in terms of a federal statute, that federal statute, the 1971 amendment to the United States Criminal Appeals Act, made "appealability of a ruling favorable to the defendant depend upon whether further proceedings upon reversal would be barred by the Double Jeopardy Clause." *Scott*, 437 U.S. at 85, 94 (discussing 18 U.S.C. § 3731 (1976 ed.)). Thus, all holdings in *Scott* directly deal with the double jeopardy clause, not just the federal statute.

The Supreme Court has adhered to this doctrine of judicial acquittals to this day. In *Evans*, decided in 2013, the Court reaffirmed *Scott*, making clear once more that a dismissal by a trial judge is a judicial acquittal when it adjudicates the ultimate question of factual guilt or innocence. 568 U.S. at 319. Such dismissals, the Court elaborated, "encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Id.* at 318-19.

But *Evans* did more than reaffirm *Scott*; it also clarified important aspects of what constitutes a judicial acquittal. In *Evans,* the United States Supreme Court held that when a trial court dismisses a case under the belief that the State failed to prove an essential element of a crime, such a dismissal results in an acquittal—even when that unproved element was not an element at all and it was thus erroneous for the trial court to treat it as an element. 568 U.S. at 318-20. There, the defendant was charged with arson. *Id.* at 316. At the close of the State's case, Evans moved for a directed verdict of acquittal. *Id.* The trial court granted the motion on the ground that the State had failed to prove that "'the building [burned] was not a dwelling house,'" which the trial court incorrectly thought was an element of the offense. *Id.* On appeal, it turned out this was not an element of the offense. *Id.* at 317. Nevertheless, the Supreme Court held that the trial court judicially acquitted Evans because it had determined that Evans was not guilty of the crime charged—even though the element the State had failed to prove was not, in fact, an element of that crime. *Id.* at 323-24.

*Evans* is the guiding light here. At the close of the State's case, defense counsel asked the judge to acquit Karpov, on the ground that the State had not proved what defense referred to as the "element" of jurisdiction. CP at 240. The district court

9

agreed. In the process, it was clear that the district court substantively treated jurisdiction as an essential element of the crime. The district court expressly labeled jurisdiction an "essential element." *Id.* at 2. When dismissing for failure of proof of jurisdiction, the trial court dismissed with prejudice, preventing the State from refiling these charges. The combination of the label of "essential element" with the dismissal with prejudice clearly shows that just as in *Evans*, the trial court treated jurisdiction as an essential element of the crime charged.[5] Just as in *Evans*, this dismissal based on failure of proof of a nonexistent essential element resulted in a judicial acquittal. The dismissal showed that substantively the district court "acted on its view that the prosecution had failed to prove its case." *Evans*, 568 U.S. at 325. Double jeopardy therefore applies, barring both the State's appeal from district court and any attempt to retry Karpov on these charges.

*Evans* also goes unmentioned by the State in its briefing. Instead, like Karpov, the State rests most of its argument on the nature of jurisdiction, arguing that jurisdiction is not an essential element. *E.g.*, Br. of Resp't at 9-10. But the State misses the point. *Evans* makes clear that double jeopardy does indeed apply in this case, despite the fact that jurisdiction is not an essential element of every crime.

We emphasize the narrow nature of this holding. Our opinion does not mean that every dismissal for failure to prove jurisdiction necessarily results in an acquittal.

---

[5] True, "like the term 'acquittal,' the phrase 'dismissal with prejudice' 'has no talismanic quality for purposes of the Double Jeopardy Clause.'" *State v. George*, 160 Wn.2d 727, 742-43, 158 P.3d 1169 (2007) (quoting *Serfass*, 420 U.S. at 392). But when combined with labeling jurisdiction an essential element, the dismissal with prejudice works to show that the trial court treated jurisdiction as an essential element.

It means only that when, as here, a trial court clearly acts on the belief that jurisdiction is an essential element of the crime and dismisses the case because it concludes the State has failed to prove jurisdiction, *then* the dismissal is a judicial acquittal.

## CONCLUSION

We reverse the superior court and remand for the superior court to reinstate the dismissal with prejudice. Double jeopardy barred the State's appeal from the district court's dismissal and prohibits the retrial of Karpov on these charges.

_Wiggins, J._

WE CONCUR.

_Madsen, J._

_González, J._

12

No. 95080-6

GORDON McCLOUD, J. (concurring)—The question presented in this case

is whether constitutional protections against double jeopardy bar retrial. The

majority agrees that this is the question presented. *See, e.g.*, majority at 1

(summarizing Karpov's argument that "double jeopardy barred the State's initial

appeal and prohibits retrial" and the State's argument that "double jeopardy does

not apply here"), 3 (reciting single standard of de novo review for the single double

jeopardy issue presented by this case). And I agree with the majority that the

answer to that question is yes: jeopardy attached at the commencement of

Karpov's first district court trial; jeopardy terminated when the district court ruled

that there was insufficient evidence to support a conviction; and the constitutions

of this state and of the United States therefore bar retrial. WASH. CONST. art. I, § 9;

U.S. CONST. amend. V.

The majority, however, focuses on a different question. It focuses on

whether jurisdiction constitutes an element of every state crime, and it answers that

question in the negative. *Id.* at 5-8. But that is not relevant: under the controlling

1

authority of *Evans v. Michigan*,[1] it does not matter whether the trial court acquits a defendant due to insufficient evidence of a real element or insufficient evidence of a matter that the trial court mistakenly thought was an element. Either way, an acquittal is an acquittal is an acquittal; the double jeopardy clauses bar retrial, the defendant can depend on that as an end to the peril of retrial, and the State must respect that as a bar to retrial. The majority's discussion of jurisdiction being a nonelement is therefore nonbinding dicta.[2] In my opinion, it is also incorrect. I therefore respectfully concur.

## ANALYSIS

After the State rested, Karpov moved to dismiss the State's charges with prejudice on the ground that the State failed to prove a necessary element: jurisdiction. Clerk's Papers (CP) at 236-39; *see also id.* at 240 ("If the [S]tate hasn't established [jurisdiction], the jury has to acquit on that . . . grounds."). After considering the evidence in the light most favorable to the State, the district court agreed that the State failed to establish jurisdiction and dismissed the charges. *Id.*

---

[1] 568 U.S. 313, 133 S. Ct. 1069, 185 L. Ed. 2d 124 (2013).

[2] The majority seems to agree that its statements about jurisdiction are unnecessary. As the majority explains, its conclusion on that issue "does not resolve the issue" before the court and *Evans* "provides the crucial answer in a situation such as this." Majority at 7-8.

2

at 243-44; *see also id.* at 249-50 ("[I]t is ordered that the above cause numbers shall be dismissed with prejudice based on the [S]tate's failure to establish jurisdiction."), 2 (written order). The district court reasoned that "on not one occasion was it established or inferred or even indicated that [the alleged crimes] occurred in Spokane County." *Id.* at 243-44.

Despite the district court's initial emphasis on the State's failure to establish jurisdiction, the court later stated that it "dismiss[ed] the case based on the [S]tate's failure to establish jurisdiction and/or venue." *Id.* at 251; *see also id.* at 2 (written order). Apparently, the district court believed that it was the State's burden to establish that the crimes had occurred in Spokane County and that it had failed to do so—regardless of whether that meant that the State had failed to prove jurisdiction, venue, or both. Under controlling federal law, the result is the same either way: the district court's dismissal with prejudice based on insufficiency of the evidence was an acquittal that bars retrial. *See* majority at 4-5 (explaining that when a judge rules that the prosecution's proof is insufficient, the judge acquits the defendant and the defendant may not be retried—"even when the judge bases the acquittal on an erroneous understanding of the elements of the crime." (citing *Evans*, 568 U.S. at 319)).

For the reasons discussed below, I would end the analysis there.

I.    The Double Jeopardy Clauses Bar This Appeal and Retrial Regardless of Whether the District Court Dismissed Due to Insufficient Evidence of Jurisdiction or Insufficient Evidence of Venue

The district court treated jurisdiction or venue as an element, found no evidence of it after the State rested, and dismissed with prejudice. As the majority holds, this terminates jeopardy—regardless of whether jurisdiction is really an element, venue is really an element, or proof of either one was really insufficient. That is exactly the holding of *Evans*. *See* 568 U.S. at 324. So a discussion of *Evans* is necessary to show that that issue alone resolves this case.

In *Evans*, Michigan prosecuted the defendant for arson. *Id.* at 315. After Michigan rested its case, the "[trial] court entered a directed verdict of acquittal, based upon its view that [Michigan] had not provided sufficient evidence of a particular element of the offense." *Id.* But "the unproven 'element' was not actually a required element at all." *Id.* The trial court had mistakenly made up the "element" based on confusingly worded pattern jury instructions. *Id.* at 316. "There is no question that the trial court's ruling was wrong; it was predicated upon a clear misunderstanding of what facts [Michigan] needed to prove under [Michigan] law." *Id.* at 320.

The Supreme Court nevertheless held that the trial court's directed verdict of acquittal terminated Evans' jeopardy and barred retrial. *Id.* at 324. So even though

4

the trial court's ruling said nothing about whether the State had proved "'some or all of the factual elements of the offense charged,'" *United States v. Scott*, 437 U.S. 82, 97, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977)), it was nonetheless an acquittal that terminated jeopardy because it "resolved the question of Evans' guilt or innocence as a matter of the sufficiency of the evidence, not on unrelated procedural grounds," *Evans*, 568 U.S. at 324.

The lesson of *Evans* is that a trial court's understanding of the law has nothing to do with whether jeopardy terminates. A trial court can have wildly mistaken views about what the State must prove. *Id.* at 325 (agreeing that jeopardy terminates when a trial court's acquittal is based on a facially absurd reason, such as "the prosecution [having] failed to prove 'that the structure burned [was] blue'" (second alteration in original)). What matters for double jeopardy purposes is that the trier of fact assesses evidence and deems it insufficient, regardless of what metric it uses to determine sufficiency.

II.     Jurisdiction Is an Essential Element of Every Crime

The double jeopardy discussion above answers the question presented. The majority's discussion of whether jurisdiction is an element is therefore dicta. But I must write separately, now, because that dicta is incorrect.

5

Our decisions have long made clear that the State must prove jurisdiction in every criminal prosecution. "Jurisdiction is the power of a court to hear and determine a case." *State v. Lane*, 112 Wn.2d 464, 468, 771 P.2d 1150 (1989) (citing *State v. Hampson*, 9 Wn.2d 278, 281, 114 P.2d 992 (1941); 20 AM. JUR. 2d *Courts* § 88, at 449 (1965)). "Proof of jurisdiction beyond a reasonable doubt is an integral component of the State's burden in every criminal prosecution." *State v. Squally*, 132 Wn.2d 333, 340, 937 P.2d 1069 (1997) (citing *State v. Svenson*, 104 Wn.2d 533, 542, 707 P.2d 120 (1985)).

Although the defendant may contest the court's jurisdiction before trial,[3] the matter cannot be conclusively resolved against the defendant at that time. *Lane*, 112 Wn.2d at 476 & n.31 (citing *Svenson*, 104 Wn.2d at 542; *Lane v. State*, 388 So. 2d 1022, 1029 (Fla. 1980) (per curiam)). In that respect, jurisdiction is like any other element that the defendant may challenge in a pretrial *Knapstad* motion. *See State v. Knapstad*, 107 Wn.2d 346, 356-57, 729 P.2d 48 (1986). And just as when the State prevails in a pretrial *Knapstad* motion, it retains the burden of proving the challenged element at trial, so too does the State retain the burden of proving that—as a factual matter—jurisdiction exists. *Id.*; *see, e.g., State v.*

---

[3] *See, e.g., State v. Norman*, 145 Wn.2d 578, 581, 40 P.3d 1161 (2002); *Lane*, 112 Wn.2d at 467.

*Vickers*, 18 Wn. App. 111, 114, 567 P.2d 675 (1977) (holding that whether

offenses were committed in Oregon or Washington was a jury question).[4]

The majority correctly notes that jurisdiction is "the court's authority or

power" and "must underlie every case that is brought before a judge." Majority at

5. But the majority fails to recognize that jurisdiction involves a factual question.

In this case, that question is: Where did the crime occur?

We need go no further than this court's own precedent in *Lane* to see that

this is a factual question. In *Lane*, the State charged the defendants with

aggravated first degree murder. 112 Wn.2d at 465. All parties agreed "that the

fatal wounds were inflicted, and the victim's death occurred, in [Fort Lewis, an]

area of exclusive federal jurisdiction." *Id.* at 470. Relying on that fact, the

---

[4] The majority cites *Serfass v. United States*, 420 U.S. 377, 391, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975), and *State v. Cockrell*, 102 Wn.2d 561, 567, 689 P.2d 32 (1984), in support of its position that jurisdiction does not constitute an element. Majority at 5-6. Those decisions stand for different rules, though. *Serfass* stands for the rule that the State may appeal a trial court's pretrial dismissal—even if it is based on proffered facts— because at that point, jeopardy has not attached—it does not attach until the trial starts. 420 U.S. at 388-92. And *Cockrell* confuses legal error (in denying a properly and timely filed affidavit of prejudice) with lack of jurisdiction—a problem that we have since recognized runs through several of our decisions. *See State v. Peltier*, 181 Wn.2d 290, 294-98, 332 P.3d 457 (2014) (highlighting this problem and explaining the difference between legal error and lack of jurisdiction). Although *Cockrell* does not use this wording, the rule that it really stands for is that the double jeopardy clauses do not bar a defendant's retrial after the defendant is convicted but then appeals and obtains reversal. 102 Wn.2d at 564, 567. That rule is uncontroversial and well established. *See Scott*, 437 U.S. at 90-91 (citing *Burks v. United States*, 437 U.S. 1, 10, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)).

7

defendants filed a pretrial motion to dismiss the charges for lack of jurisdiction.
*Id.* at 467. The trial court denied the motion, and we affirmed its ruling on
interlocutory review. *Id.* at 467, 476.

We recognized that the trial court had jurisdiction "if an essential element of
the crime was committed within the state of Washington outside Fort Lewis." *Id.*
at 471. Even though the State conceded that one of the elements of the crime—
infliction of the fatal wounds—had occurred inside Fort Lewis (and therefore
outside Washington's jurisdiction), it contended that it could prove that another
element—premeditation—had occurred outside Fort Lewis (and therefore within
Washington's jurisdiction). *Id.* at 470. We agreed that the State's evidence on this
point—an affidavit—sufficed in the pretrial setting to establish the jurisdictional
facts necessary for the superior court to hold a trial. *Id.* at 466, 476 (concluding
that "based on the showing made by the State at this point in the case, that the State
of Washington does have jurisdiction to *proceed* with [the] trial" (emphasis
added)). We made clear, however, that "*at trial* the State will have the burden of
proving beyond a reasonable doubt [to the trier of fact] that jurisdiction does in fact

8

rest with the Washington courts." *Id.* at 476 & n.31 (emphasis added) (citing

*Svenson*, 104 Wn.2d at 542; *Lane*, 388 So. 2d at 1029).[5]

---

[5] The decision in *State v. L.J.M.*, 129 Wn.2d 386, 918 P.2d 898 (1996), is not to the contrary (and did not silently overrule *Lane*).

In *L.J.M.*, the State introduced evidence demonstrating that an offense took place in a part of Washington "that the parties agree[d] [was] within the external geographic boundaries of the Colville Indian Reservation." 129 Wn.2d at 388. The question was whether that showing satisfied the State's burden of proof, given that the defendant testified that he was a member of the Colville Confederated Indian Tribe. *Id.* at 390. Because of the defendant's tribal affiliation, the state Supreme Court could exercise jurisdiction only if the offense occurred on fee title land within the reservation. *Id.* at 389 & n.2 (quoting RCW 37.12.100).

We explained that a showing that "the site of the alleged crime is within the state of Washington" established the State's prima facie case that jurisdiction existed, which the parties had agreed was the State's burden. *Id.* at 392, 394. It is true that we did not explicitly state that the burden of proof was beyond a reasonable doubt. But we did not need to state as much—the parties were in agreement. So *L.J.M.* does not conflict with the beyond-a-reasonable-doubt standard. Nor did it endorse a burden-shifting scheme; it simply held that as in any other case with any other element, the State must make a prima facie showing of jurisdiction.

*L.J.M.* had another holding, though. It ruled that the court, not the jury, may determine that the State has carried its burden of proving jurisdictional facts. *Id.* at 396-97. Subsequent United States Supreme Court authority compels us to follow *Lane*, not *L.J.M.* Both *L.J.M.* and *Lane* preceded the United States Supreme Court's decision in *Apprendi v. New Jersey*, which recognized the importance of jurors as fact finders. 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Lane* is more consistent with *Apprendi* and the line of decisions that follow it. Additionally, because an assertion of jurisdiction always relies on an accompanying assertion of fact, *Lane* is more consistent with our state constitution, which allocates matters of law to the court and matters of fact (or mixed fact and law) to the jury. WASH. CONST. art. IV, § 16; *State v. Becker*, 132 Wn.2d 54, 935 P.2d 1321 (1997). Finally, *Lane* is more consistent with our own decisions described in this opinion; *L.J.M.* is the outlier.

Washington's pattern jury instructions are certainly not binding precedent,

but they are well researched and persuasive, and they reflect this requirement. The

general "to convict" instruction includes as an element that must be proved

"beyond a reasonable doubt" the following: "That any of these acts occurred in the

[territory of the court's jurisdiction]." 11 WASHINGTON PRACTICE: WASHINGTON

PATTERN JURY INSTRUCTIONS: CRIMINAL 4.21, at 108 (4th ed. 2016) (WPIC).[6] The

same can be found in the pattern "to convict" instructions for the specific indecent

exposure offenses charged here.[7] *See* WPIC 47.02, at 952 ("Indecent Exposure—

---

[6] Depending on the offense, the State may bring charges in superior court, district court, or municipal court. Because a superior court has statewide jurisdiction, WASH. CONST. art. IV, § 6, the requisite showing for a prosecution in that court is that one of the acts took place in Washington. RCW 9A.04.030; *Lane*, 112 Wn.2d at 470-71. Because a district court has countywide jurisdiction (as in this case), WASH. CONST. art. IV, § 10; RCW 3.66.060, the requisite showing for a prosecution in that court is that one of the acts took place in the county in which the district court sits. *But see* WPIC 4.20, at 107 (noting that the rule may be different when the district court functions as a municipal court pursuant to an interlocal government agreement). And because a municipal court has municipality-wide jurisdiction, WASH. CONST. art. IV, § 12; RCW 3.50.020, the requisite showing for a prosecution in that court is that one of the acts took place within the municipality. In that vein, the pattern instruction lists "State of Washington," "City of ____," and "County of ____" as the possible territorial options, and for that "final *element*," the accompanying note tells the court to "choose from among [the three] depending on whether the case is in superior, municipal, or district court." WPIC 4.21, at 108 (emphasis added).

[7] Because the State declined to make the information part of the record on appeal, *see State v. Sisouvanh*, 175 Wn.2d 607, 619, 290 P.3d 942 (2012) (noting that the party seeking appellate review ordinarily bears the burden of establishing the record on appeal (citing RAP 9.2(b))), we do not know whether the State brought its charges as misdemeanors, gross misdemeanors, or a mix of the two. *See* RCW 9A.88.010

10

Person Fourteen Years or Older—Elements"); WPIC 47.04, at 955 ("Indecent

Exposure—Person Under Fourteen Years—Elements"); *see also* WPIC 4.20, at

105 ("Jurisdiction in a criminal case must be proved beyond a reasonable doubt.

The 'to convict' instruction must always include an element addressing the court's

jurisdiction." (citation omitted)).

The State bears this burden of proof "because not only are significant rights

of the defendant affected, but the State is exercising its sovereignty and is bound to

assure that it does so with authority." *Svenson*, 104 Wn.2d at 542. That purpose is

substantive: it provides the defendant with protection against the unlawful exercise

of government power.[8]

The majority suggests that jurisdiction is an essential element only when the

statute defining the particular crime charged lists a locational element. Majority at

---

(delineating indecent exposure offenses). The information, of course, must allege that
"the crime was committed within the jurisdiction of the court." RCW 10.37.050(4).

[8] This rule also affords respect to other sovereigns, including the federal
government, other states, and tribal nations. Washington's unconsented-to exercise of
criminal jurisdiction over affairs that are exclusively within the jurisdiction of another
sovereign would invade that sovereign's interests. *Cf. Nielsen v. Oregon*, 212 U.S.
315, 320-21, 29 S. Ct. 383, 53 L. Ed. 528 (1909) (holding that Oregon cannot prosecute a
Washingtonian for conduct that is lawful in Washington but unlawful in Oregon, given
that the conduct occurred in Washington); *State v. Hornaday*, 105 Wn.2d 120, 129,
713 P.2d 71 (1986) (noting that 20-year-old Washingtonian who lawfully consumes
alcohol in British Columbia does not violate Washington's minor-in-possession statute).

6-7. But we have already recognized that a crime's "essential elements" come from case law as well as statute. *State v. Johnson*, 119 Wn.2d 143, 146-47, 829 P.2d 1078 (1992); *State v. Kjorsvik*, 117 Wn.2d 93, 95-102, 812 P.2d 86 (1991). And in any event, a statute cannot relieve the State of its burden of proving that it is exercising its power within the bounds of its authority. *Svenson*, 104 Wn.2d at 542. Moreover, the lack of a locational element in the murder statutes at issue in *Lane* did not prevent this court from holding that "at trial the State will have the burden of proving beyond a reasonable doubt that jurisdiction does *in fact* rest with the Washington courts." 112 Wn.2d at 476 (emphasis added); *see* former RCW 9A.32.030 (1975); former RCW 10.95.020 (1981).

In my view, jurisdiction constitutes an element of every state crime. The question of jurisdiction is sometimes a legal question for the court *before* trial, but it is always a question of fact for the fact finder *at* trial. So the State must introduce evidence that satisfies the trier of fact, beyond a reasonable doubt, that jurisdiction exists. And once the judge or the jury determines that the State failed to meet its burden, jeopardy is terminated, and the defendant cannot be retried on the same charges. *Evans*, 568 U.S. at 328; *see also State v. Collins*, 112 Wn.2d 303, 307, 771 P.2d 350 (1989) (stating that "the judge acted as the trier of fact"

when the judge viewed the evidence in the light most favorable to the State and ruled on the defendant's motion to dismiss for insufficient evidence).

## CONCLUSION

After the State rested, the district court ruled that the State had failed to introduce sufficient evidence to convict. The court therefore dismissed with prejudice. I agree with the majority that the double jeopardy clauses of our state and federal constitutions bar retrial, and I would end the analysis there. I disagree with the majority's unnecessary discussion of whether jurisdiction is an element of every state crime; I also disagree with its conclusion on that point. I therefore respectfully concur.

_____

McCloud, J.

_____

_____

Fairhurst, CJPT